UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

CHRISTINA EDWARDS,

                                    Plaintiff,          Case # 18-cv-6800-FPG

v.                                                               DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                    Defendant.
───────────────────────────────

## INTRODUCTION

On September 3, 2014, Plaintiff Christina Edwards protectively applied for Supplemental Security Income under Title XVI of the Social Security Act (the "Act"), alleging disability beginning September 3, 2014. Tr.[1] 172-77, 205. After the Social Security Administration ("SSA") denied her claim, Tr. 63, Plaintiff appeared, with counsel, at a hearing before Administrative Law Judge Paul Georger ("the ALJ"). Tr. 34-62. On October 10, 2017, the ALJ issued an unfavorable decision. Tr. 15-28. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the SSA. Tr. 1-6. Plaintiff then appealed to this Court.[2] ECF No. 1.

The parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 9, 12.[3] For the reasons that follow, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED for further proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

[2] The Court has jurisdiction over this action under 42 U.S.C. § 1383(c)(3).

[3] Plaintiff also filed a motion to permit a reply brief. ECF No. 13. That motion is granted. Plaintiff's reply brief is located at ECF No. 13-1.

1

**LEGAL STANDARD**

**I.      District Court Review**

When it reviews a final decision of the SSA, it is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the Court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. §§ 405(g), 1383(c)(3)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.     Disability Determination**

To determine whether a claimant is disabled within the meaning of the Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of his or her age, education, and work experience. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986); *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see also* 20 C.F.R. §§ 404.1520, 416.920.

**DISCUSSION**

**I.    The ALJ's Decision**

The ALJ analyzed Plaintiff's claim for benefits using the process described above.  At step one, the ALJ found Plaintiff had not engaged in gainful activity since the alleged onset date.  Tr. 17.  At step two, the ALJ found that Plaintiff had several severe impairments, including borderline intellectual functioning, adjustment disorder with depression, and post-traumatic stress disorder ("PTSD"), and major depressive disorder.[4]  Tr. 17.  At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any Listings impairment.  Tr. 18-21.

Next, the ALJ determined that Plaintiff retains the RFC to perform a "full range of work at all exertional levels," but with the following non-exertional limitations: Plaintiff can perform a low stress job, requiring occasional decision-making, occasional judgments, and occasional changes in work setting. The ALJ also limited Plaintiff to low stress jobs that are goal-oriented "rather than oriented toward production pace or an assembly line" and jobs "requiring simple and repetitive instructions."  Tr. 21.  Finally, the ALJ limited Plaintiff to "no more than occasional contact with coworkers, supervisors, and the public."  Tr. 21.

At step four, the ALJ found that Plaintiff is capable of performing his past relevant work as a dietary aide.  Tr. 26.  Therefore, the ALJ concluded that Plaintiff is not disabled.  Tr. 28.

**II.    Analysis**

Plaintiff argues that (1) the ALJ improperly rejected or failed to incorporate into the RFC the medical opinions regarding Plaintiff's inability to maintain attention, concentration, and a regular schedule; (2) the ALJ failed to assess all of the medical opinions in the record; (3) the ALJ improperly weighed the opinion of the state agency psychologist; and (4) the ALJ's conclusions

---

[4] Plaintiff's physical impairments are not at issue in this appeal.

3

at Steps Four and Five were not supported by substantial evidence. Because the Court agrees with parts of Plaintiff's first and second arguments, the Court declines to address the remaining arguments.

There are three relevant opinions, all of which indicate that Plaintiff has some limitations in ability to maintain attention, concentration, and a regular schedule.

First, state agency psychological consultant H. Ferrin, M.D., opined that Plaintiff would be moderately limited in ability to maintain concertation, attention, and regular attendance. Tr. 70-71. Dr. Ferrin also opined that Plaintiff would be moderately limited in ability to complete a normal workday and normal workweek without interruption. Tr. 71. The ALJ gave this opinion "significant weight." Tr. 25.

Second, psychological consultative evaluator Amanda Slowik, Psy.D. opined that Plaintiff's attention and concentration were "[m]arkedly impaired due to the claimant's limited intellectual functioning." Tr. 266. Specifically, Plaintiff could count backwards from 10 and do simple addition, but struggled with simple multiplication and division. When she was asked to subtract by 3s starting at 20 she stated "I'm not good with multiplications." Tr. 266. Dr. Slowik also indicated that Plaintiff's ability to learn new tasks and perform complex tasks was markedly limited. Tr. 267. Dr. Slowik opined that Plaintiff's recent and remote memory skills, ability to perform simple tasks, ability to maintain a regular schedule, and ability to make appropriate decisions were "[m]oderately impaired." Tr. 266-67. The ALJ discussed but did not weigh this opinion.

Finally, Plaintiff's own mental health therapist, Matthew Romanti, LCSW, opined that that Plaintiff would have "extreme limitations" in maintaining attention, concentration, and a regular schedule. Tr. 556. Romanti concluded that Plaintiff would be off task more than 33% of the day

4

and would have three or more absences per month. Tr. 557. The ALJ gave "limited weight" to this opinion, concluding that Romanti's treatment relationship with Plaintiff was unclear and that the opinion was more restrictive than the Plaintiff's treatment records or her own reports suggest. Tr. 25-26.

Plaintiff argues that while each of the three mental health opinions—including one the ALJ gave "significant weight"—concluded that Plaintiff had at least moderate limitations in maintaining attention, concentration, and a regular schedule, the ALJ did not incorporate any such limitations into the RFC. The Court partially agrees.

Courts in this district have suggested[5] that an ALJ may, as here, incorporate moderate limitations in attention and concentration into an RFC by limiting the claimant to simple, low-stress, and non-production pace tasks. *West v. Berryhill*, 298 F. Supp. 3d 577, 579 (W.D.N.Y. 2018) ("[D]istrict courts in this circuit have held that an RFC which includes the ability to concentrate for up to two hours at a time, with or without the additional limitations to simple tasks and a low-stress, non-production pace environment that the ALJ included here, is sufficient to permit a claimant with 'moderate' limitations in attention and concentration to work."). However. limitations to "low stress" jobs, like in the RFC here, do not account for moderate limitations in the ability to maintain a regular schedule. *See Matthews v. Comm'r of Soc. Sec.*, No. 1:17-CV-00371-MAT, 2018 WL 4356495, at *3 (W.D.N.Y. Sept. 13, 2018) ("However, in this case, the consultative examiner noted both moderate limitations in attention and concentration and moderate limitations in the ability to maintain a regular schedule, and the ALJ failed to state in his opinion that these limitations were accounted for in the RFC finding. To the contrary, while the ALJ expressly stated that Plaintiff's difficulties in performing complex and varied tasks, learning new

---

[5] Note that in at least one of these cases, the ALJ provided a specific two-hour limitation on plaintiff's ability to concentrate—a limitation not included here.

tasks, relating to others, and dealing with stress were accounted for by the limitation to simple, repetitive, and routine tasks (*see* T. 23), he made no mention whatsoever of Plaintiff's limitations in attention and concentration and in maintaining a schedule."). The ability or inability to maintain a schedule, therefore, can operate independently of whether a task is stressful. In other words, a claimant may be able to complete low stress work but also have trouble maintaining a regular schedule; the two are not mutually exclusive. Indeed, despite the fact that all three mental health opinion providers agreed that Plaintiff has at least moderate difficulty in maintaining a regular schedule, the RFC does not include any such limitation.

The ALJ provides *no* rationale for failing to include any limitation in Plaintiff's ability to maintain a schedule. "[T]he ALJ is required to provide [a] rationale in the written decision sufficient to allow this Court to conduct an adequate review of [his] findings. . . . It is not the function of this Court to speculate as to the evidence and legal standards on which the ALJ based [his] decision, nor to supply its own rationale where the ALJ's decision is lacking or unclear." *Dittmar v. Comm'r of Soc. Sec.*, No. 1:16-CV-0404 (CFH), 2017 WL 2333836, at *5 (N.D.N.Y. May 30, 2017). The ALJ's error in this respect is compounded by his complete failure to weigh the opinion from Dr. Slowik, the mental health consultative evaluator.

The regulations are clear that "[r]egardless of its source, we will evaluate every medical opinion we receive." 20 C.F.R. §§ 404.1527(c), 416.927(c). "Failure to provide specific weight to a medical opinion does not constitute *per se* remandable error. The Second Circuit has held, where an ALJ fails to provide a specific weight to an opinion remand may not be necessary if the ALJ's rational [sic] can be inferred from his decision." *Nolan v. Comm'r of Soc. Sec.*, No. 1:17-CV-1190 (WBC), 2019 WL 342413, at *4 (W.D.N.Y. Jan. 28, 2019); *see Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) ("Although the ALJ did not describe in detail her rationale, we can

infer from the decision that she attributed 'great weight' to the opinion because she found it most consistent with the record as a whole.").

Here, however, the ALJ's rationale cannot be inferred from his decision. While the Commissioner is correct that the ALJ did describe Dr. Slowik's opinion, the ALJ omitted that Dr. Slowik opined that Plaintiff would have moderate limitations in ability to maintain a regular schedule. *See Matthews*, 2018 WL 4356495, at *4 (concluding that the ALJ committed error when he "failed to explain his conclusion regarding [consultative evaluator's] finding that Plaintiff had moderate limitations in the ability to maintain attention and concentration and the ability to maintain a regular schedule, and in fact omitted those limitations entirely from his discussion of [consultative evaluator's] opinion").

Furthermore, the ALJ's failure to assign any weight to the opinion frustrates meaningful review of the ALJ's decision because it does not track Dr. Slowik's opinion. In other words, it is unclear from the decision whether the ALJ intended to reject or accept Dr. Slowik's opinion in whole or in part and on what basis. For example, the ALJ seems to adopt some of Dr. Slowik's limitations, but appears to have wholesale rejected—or simply forgot—to include any limitations in Plaintiff's ability to maintain a regular schedule. This is particularly problematic because, as explained above, the ALJ ignored all of the consistent opinion evidence demonstrating that Plaintiff would have trouble maintaining a regular schedule. Indeed, the ALJ's omission of any limitation in Plaintiff's ability to maintain a regular schedule *conflicts* with *all* of the mental health opinion evidence. Plaintiff's own therapist, whose opinion the ALJ rejected, concluded that Plaintiff was *extremely* limited in ability to complete a normal workday and perform activities with regular attendance. Tr. 556. According to Romanti, Plaintiff's functioning in this area was so severely affected that she would be off task more than 33% of the day and absent more than three

days per month. Tr. 557. Because the ALJ's reasoning cannot be gleaned from the decision, his failure to explicitly weigh Dr. Slowik's opinion is not harmless error. *See Nolan*, 2019 WL 342413, at *5 ("[F]ailure to assign a specific weight to an opinion is only harmless where an ALJ's reasoning can be inferred from the decision. Here, the ALJ's reasoning cannot be gleaned from his decision because the decision makes no reference to Dr. Levine's opinion regarding Plaintiff's functional abilities.").

## CONCLUSION

Plaintiff's motion to allow a reply brief, ECF No. 13, is GRANTED. For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 9, is GRANTED, the Commissioner's motion for judgment on the pleading, ECF No. 12, is DENIED, and the matter is REMANDED to the Commissioner for further administrative proceedings consistent with this opinion, pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court shall enter judgment and close this case.

IT IS SO ORDERED.

Dated: November 16, 2020
Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court